IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LAWANDA J. VALENTINE-WILLIAMS, | |
| Plaintiff, | NO. 8:24CV165 |
| vs. | |
| THE CITY OF OMAHA, NEBRASKA; MATTHEW A. RECH; DARRELLE F. BONAM; ANGELA M. LYDON; MOLLY TALBITZER; HEIDI SCHLOTZHAUER; JUSTIN KNAPP; KEVIN SLIMP; MAKAYLA DANNER; and JANE AND JOHN DOES 1-10, | MEMORANDUM AND ORDER ON THE CITY PROSECUTORS' MOTION TO DISMISS |
| Defendants. | |

Plaintiff LaWanda Valentine-Williams brings five constitutional claims against various defendants, including the City of Omaha, six police officers, two city prosecutors, and ten Jane and John Does. Filing 22. The Court presently considers the two city prosecutors' Motion to Dismiss the claims against them for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Filing 40. For the reasons below, the city prosecutors' motion is granted.

I. INTRODUCTION

A. Factual Background

The Court considers the following nonconclusory allegations as true for the purpose of ruling on the city prosecutors' Rule 12(b)(6) Motion to Dismiss. *See Bauer v. AGA Serv. Co.*, 25 F.4th

1

587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)).

Plaintiff LaWanda Valentine-Williams is a 56-year-old African American female who alleges that she was retaliated against and punished for refusing to consent to a warrantless search of her residence. Filing 22 at 2 (¶ 5), 4 (¶ 23), 6 (¶ 28). Valentine-Williams claims that police officers from the Omaha Police Department arrived at her residence on May 12, 2021, and asked her to consent to a search of her residence. Filing 22 at 6 (¶ 27). She does not allege why the police officers came to her house or why they asked to search her house, but Valentine-Williams asserts that she refused to consent to an allegedly warrantless search of her residence. Filing 22 at 6 (¶ 28). According to Valentine-Williams, the officers then handcuffed her, dragged her off the porch, threw her to the ground, carried her across the lawn, locked her in a police vehicle for approximately an hour and a half, transported her to the Douglas County Department of Corrections and held her there for approximately six hours, searched her house without her consent, and seized her lawfully owned gun. Filing 22 at 6–9 (¶¶ 34–42). Valentine-Williams alleges that defendants Kevin Slimp and Makayla Danner, both attorneys for the City of Omaha, subsequently charged Valentine-Williams with obstructing the administration of law and resisting arrest. Filing 22 at 9 (¶ 43). On September 2, 2021, Slimp and Danner (collectively, the City Prosecutors) dismissed all charges against Valentine-Williams. Filing 22 at 9 (¶ 44).

### B. Procedural Background

Valentine-Williams filed a Complaint in this Court on May 8, 2024, naming as defendants the City of Omaha, Nebraska, and Jane and John Does 1-10. Filing 1. On December 16, 2024, Valentine-Williams filed an Amended Complaint that named Matthew A. Rech, Darrelle F. Bonam, Angela M. Lydon, Molly Talbitzer, Heidi Schlotzhauer, Justin Knapp, Kevin Slimp, and Makayla

2

Danner as defendants in addition to the City of Omaha and Jane and John Does 1-10. Filing 22. The Amended Complaint sues each of the individual defendants in their individual and official capacities. Filing 22 at 4 (¶ 21).

In her Amended Complaint, Valentine-Williams alleges violations of 42 U.S.C. § 1982, 42 U.S.C. § 1985, and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983, and she asserts five claims against the defendants. Filing 22 at 1 (¶ 1), 11–14 (¶¶ 56–83). First, she asserts a "False and Retaliatory Arrest" claim against the six police officer defendants, namely Rech, Bonam, Lydon, Talbitzer, Schlotzhauer, and Knapp. Filing 22 at 11 (¶¶ 56–61) (Count I). Her second cause of action is a "False Imprisonment/Seizure of Person" claim against the police officer defendants. Filing 22 at 12 (¶¶ 62–67) (Count II). Valentine-Williams's third count is a malicious prosecution claim against the City Prosecutors. Filing 22 at 12–13 (¶¶ 68–74) (Count III). She also asserts a "Use of Excessive Force" claim against the police officer defendants. Filing 22 at 13–14 (¶¶ 75–79) (Count IV). Finally, Valentine-Williams brings an equal protection claim against "Defendants" generally. Filing 22 at 14 (¶¶ 80–83) (Count V). Although she does not clearly delineate such a claim, Valentine-Williams also presumably brings a sixth claim—a conspiracy claim—against the defendants because she indicates that her Amended Complaint is pursuant to 42 U.S.C. § 1985 and because she asserts that "Defendants acted in concert with, in conjunction with, and conspired with each other and some or all of the Defendants to violate [her] constitutional and other rights." Filing 22 at 1 (¶ 1), 4 (¶ 19); *see* 42 U.S.C. § 1985 (prohibiting conspiracies to interfere with a person's civil rights).

On February 14, 2025, the City Prosecutors filed a Motion to Dismiss the claims against them. Filing 40. The City Prosecutors assert that they are entitled to absolute immunity or else qualified immunity from the claims against them and that those claims should be dismissed for

3

failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). Filing 40 at 1. The motion has been fully briefed, and the Court considers its merits below.

## II. ANALYSIS

### A. Rule 12(b)(6) Standards

The typical grounds for Rule 12(b)(6) motions are the insufficiency of the factual allegations offered to state claims. To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, "'threadbare recitals of the elements of a cause of action' cannot survive a [Rule 12(b)(6)] motion to dismiss." *Du Bois v. Bd. of Regents of Univ. of Minnesota*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, as the Eighth Circuit Court of Appeals has explained, "A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680–83). To put it another way, a court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). Thus, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). "[M]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). Moreover,

4

"[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Christopherson*, 33 F.4th at 499 (internal quotation marks and citations omitted). In ruling on a Rule 12(b)(6) motion, a court need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021).

### B. Valentine-Williams Has Failed to State Claims Against the City Prosecutors

*1. The Parties' Arguments*

The City Prosecutors argue that the claims asserted against them in their individual and official capacities should be dismissed pursuant to Rule 12(b)(6). Filing 41 at 1. The City Prosecutors first point out that the only allegations against them in the Amended Complaint are allegations that they are prosecutors for the City of Omaha who filed and later dismissed criminal charges against Valentine-Williams. Filing 41 at 5–6. The City Prosecutors contend that they are entitled to absolute immunity from the individual capacity claims against them because their actions of filing and dismissing criminal charges are "clearly prosecutorial actions." Filing 41 at 6. Although the City Prosecutors' Motion to Dismiss suggests that the City Prosecutors intended to argue in the alternative that they are entitled to qualified immunity, their brief does not contain any such argument. Filing 40 at 1; *see generally* Filing 41. As for the official capacity claims against them, the City Prosecutors maintain that those claims should be dismissed because they are redundant of Valentine-Williams's claims against the City of Omaha, which is also a defendant in this case. Filing 41 at 6.

Valentine-Williams counters that the Court should deny the City Prosecutors' Motion to Dismiss because she "clearly met the standard articulated by the Supreme Court" in *Hartman v.*

5

*Moore*, 547 U.S. 250 (2006), a First Amendment retaliatory prosecution case. Filing 47 at 1–2. According to Valentine-Williams, her Amended Complaint establishes that the City Prosecutors "brought charges solely for constitutionally offensive reasons," namely, "to retaliate against Valentine-Williams for exercising her constitutional rights and to discriminate against her because of her race." Filing 47 at 5. Valentine-Williams argues that she has stated claims against the City Prosecutors under *Hartman* because she has "expressly pled the criminal charges were not supported by probable cause, but [were] 'unreasonable, baseless, [and] malicious.'" Filing 47 at 5 (quoting Filing 22 at 13 (¶ 70)). Valentine-Williams also contends that her Amended Complaint "sufficiently alleges a conspiracy between the prosecutors and the Omaha Police Department and conduct which is out of court and not shielded by absolute immunity." Filing 47 at 6 (reduced from capitals). Valentine-Williams claims that she has sufficiently asserted that the City Prosecutors and the police officers operated pursuant to a policy stating "that if an African-American citizen refuses a warrantless search of their residence, police officers are to retaliate against that individual, make an unlawful arrest using excessive force, remove the individual from their residence, and charge that individual with crimes." Filing 47 at 7 (quoting Filing 22 at 9 (¶ 46)). According to Valentine-Williams, the City Prosecutors are thus "shielded no more for their conduct than the police officers who have performed the actions themselves." Filing 47 at 7. Finally, Valentine-Williams argues that the City Prosecutors are not entitled to qualified immunity because they "clearly violate[d] several of [her] constitutional rights." Filing 47 at 8.

In response, the City Prosecutors challenge Valentine-Williams's reliance on the *Hartman* case, asserting that the case supports their argument in favor of absolute immunity because the claims that had been asserted against the federal prosecutor in that case had been dismissed on absolute immunity grounds and were not the subject of the appeal or the Supreme Court's holding.

6

Filing 48 at 2. The City Prosecutors also reiterate their belief that they are entitled to absolute immunity because their actions of filing and dismissing charges against Valentine-Williams are "exactly the kind of inherently prosecutorial function[s]" protected by absolute immunity. Filing 48 at 3.

2. *The Applicable Law*

"[A]bsolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976)). "If the prosecutor is acting as advocate for the state in a criminal prosecution, then the prosecutor is entitled to absolute immunity." *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). The Eighth Circuit has explained that:

> Prosecutors enjoy absolute immunity in their review of and decisions to charge a violation of the law. *Imbler*, 424 U.S. at 420–27, 431, 96 S.Ct. 984. Absolute immunity protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case "insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Burns v. Reed*, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (quoting *Imbler*, 424 U.S. at 430, 96 S.Ct. 984). Because the immunity depends on the functional nature of the prosecutor's activities, allegations of improper motive in the performance of prosecutorial functions will not defeat its protection. *Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir. 1987), *abrogated on other grounds*, *Burns v. Reed*, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). *See also Reasonover v. St. Louis Cnty.*, 447 F.3d 569, 580 (8th Cir. 2006).

*Sample*, 836 F.3d at 916. "There is no question that [a prosecutor's] filing of criminal charges against [the plaintiff] [is] an action intimately associated with the judicial phase of the criminal process." *Id. See also Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) ("The acts of preparing, signing, and filing a criminal complaint constitute prosecutorial functions, as they are advocacy on behalf of the government."). Moreover, absolute immunity "is not defeated by allegations of malice,

7

vindictiveness, or self-interest, and applies even if the prosecutor's steps to initiate a prosecution are patently improper." *Sample*, 836 F.3d at 916 (internal quotation marks and citations omitted). "Where an official's challenged actions are protected by absolute immunity, dismissal under Rule 12(b)(6) is appropriate." *Id.*

> 3. *The City Prosecutors Are Entitled to Absolute Immunity on the Individual Capacity Claims Against Them*

The only claims that Valentine-Williams brings against the City Prosecutors are a malicious prosecution claim, an equal protection claim, and a conspiracy claim. *See generally* Filing 22. To the extent Valentine-Williams asserts these claims against the City Prosecutors in their individual capacities, the Court agrees with the City Prosecutors that they are entitled to absolute immunity for the reasons below. Because the City Prosecutors are entitled to absolute immunity, the Court does not separately consider the applicability of qualified immunity.

As the City Prosecutors point out, the only factual allegations in the Amended Complaint related to the City Prosecutors are allegations that they are attorneys for the City of Omaha, they charged Valentine-Williams with obstructing the administration of law and resisting arrest, and they later dismissed all charges against her. Filing 22 at 3 (¶¶ 14–15), 4 (¶ 18), 9 (¶¶ 43–44), 12 (¶ 69), 13 (¶ 72). A prosecutor's decision to file and dismiss criminal charges falls squarely within the scope of absolute prosecutorial immunity because in making such a decision, the prosecutor "is acting as advocate for the state in a criminal prosecution." *Brodnicki*, 75 F.3d at 1266 ("Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process."). *See also Sample*, 836 F.3d at 916 ("Prosecutors enjoy absolute immunity in their review of and decision to charge a violation of the law."). Valentine-Williams has not alleged that

the City Prosecutors engaged in any investigative or administrative functions—functions that might not justify absolute immunity. *See Winslow v. Smith*, 696 F.3d 716, 739 (8th Cir. 2012) ("[P]urely administrative or investigative actions that do not relate to the initiation of a prosecution do not qualify for absolute immunity." (quoting *Schenk*, 461 F.3d at 1046)). Instead, Valentine-Williams has alleged only that the City Prosecutors took actions that were "intimately associated with the judicial phase of the criminal process." *Sample*, 836 F.3d at 916. Valentine-Williams's claim that the charges the City Prosecutors filed (and dismissed) were "unreasonable, baseless, malicious, and done to retaliate against [her] for exercising her right to refuse to consent to a warrantless search of her residence" does not defeat the City Prosecutors' entitlement to absolute immunity. Filing 22 at 13 (¶ 70). Although the Court makes no determination regarding the City Prosecutors' motives or the steps they took to initiate the prosecution of Valentine-Williams, the law is clear that the protection of absolute immunity applies "even if the prosecutor's steps to initiate a prosecution are patently improper" and even amid "allegations of malice, vindictiveness, or self-interest." *Sample*, 836 F.3d at 916 (internal quotation marks and citations omitted).

Valentine-Williams mistakenly relies on *Hartman v. Moore*, 547 U.S. 250 (2006), in an attempt to defeat the City Prosecutors' entitlement to absolute immunity. Filing 47 at 3–5. In *Hartman*, the plaintiff brought a *Bivens* action against a federal prosecutor and five postal inspectors who he alleged violated his First Amendment rights by inducing prosecution of him in retaliation for his speech. *Hartman*, 547 U.S. at 252. The Court does not need to analyze whether the First Amendment retaliatory prosecution claim in *Hartman* shares elemental similarities with Valentine-Williams's Fourth Amendment malicious prosecution claim because even assuming such similarities exist, the *Hartman* court explicitly stated that "[a] *Bivens* (or § 1983) action for retaliatory prosecution will not be brought against the prosecutor, who is absolutely immune from

9

liability for the decision to prosecute." *Hartman*, 547 U.S. at 261–62 (citing *Imbler*, 424 U.S. at 431). Indeed, the *Hartman* plaintiff's claims against the federal prosecutor had been dismissed on absolute immunity grounds long before the case reached the Supreme Court. *Id.* at 254–55. *Hartman* thus reinforces the City Prosecutors' entitlement to absolute immunity, not undermines it as Valentine-Williams hopes. Accordingly, Valentine-Williams's argument that *Hartman* requires plaintiffs bringing retaliatory prosecution claims to "plead and prove the absence of probable cause for the underlying criminal charge" would be better asserted against defendants who are not entitled to absolute prosecutorial immunity. Filing 47 at 5 (quoting *Nieves v. Bartlett*, 587 U.S. 391, 400 (2019)).

Because the City Prosecutors are entitled to absolute immunity for their prosecutorial conduct of filing and dismissing criminal charges, the individual capacity claims against them are dismissed. *See Sample*, 836 F.3d at 916 ("Where an official's challenged actions are protected by absolute immunity, dismissal under Rule 12(b)(6) is appropriate.").

### 4. The Official Capacity Claims Against the City Prosecutors Are Dismissed as Redundant of the Claims Against the City of Omaha

The City Prosecutors also seek dismissal of the official capacity claims against them, arguing that because the City of Omaha is a defendant in this case, the official capacity claims against the City Prosecutors are redundant of the claims against the City. Filing 41 at 6. The Court agrees. "A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Schaffer v. Beringer*, 842 F.3d 585, 596 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006)). In other words, "official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotation marks

and citations omitted). This means that Valentine-Williams's official capacity claims against the City Prosecutors are really claims against their employing entity, the City of Omaha. *See Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) ("A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity."). Because the City of Omaha is also a party to this suit, the Court dismisses the official capacity claims against the City Prosecutors as redundant of the claims against the City. *See id.* (concluding that the district court properly dismissed the official capacity claim against a police sergeant as redundant of the municipal liability claim against the city).

### C. The Doe Defendants

The Court concludes with a brief note on defendants "Jane and John Does 1-10," who Valentine-Williams describes as "individuals, yet to be identified, who acted in concert with, in conjunction with, and conspired with some or all the Defendants to violate Valentine-Williams'[s] constitutional and other rights." Filing 22 at 4 (¶ 20). It is generally "impermissible to name fictitious parties as defendants." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). However, "an action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." *Id.* Even under this "limited exception to the general prohibition against naming fictious parties as defendants," Valentine-Williams must still comply with the Federal Rules of Civil Procedure. *Perez v. Doe(s) 1 through 10*, No. 4:18CV3014, 2018 WL 11260438, at *6 (D. Neb. Apr. 9, 2018); *Ottis v. Fischer Price*, 627 F.Supp.2d 1040, 1049 (D. Neb. May 30, 2008) (dismissing the plaintiff's allegations against unnamed defendants after the plaintiff failed to effect service on them).

Federal Rule of Civil Procedure 4(m) requires Valentine-Williams to effect service on the defendants—named and unnamed alike—within 90 days after filing her Complaint. Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."). *See also Lee v. Airgas Mid-South, Inc.*, 793 F.3d 894, 898 (8th Cir. 2015) (explaining that an amended complaint does not restart the Rule 4(m) service period for defendants named in the original complaint). Valentine-Williams filed her original Complaint on May 8, 2024, and her Amended Complaint on December 16, 2024, naming Jane and John Does 1-10 in both. Valentine-Williams has yet to provide proof of service of summons and complaint on the Jane and John Doe defendants. Valentine-Williams has also failed to file a motion for an extension of time to permit discovery of the Jane and John Doe defendants' identities. Accordingly, the Court gives Valentine-Williams notice pursuant to Rule 4(m) that unless she files a motion for an extension of time for leave to serve defendants Jane and John Does 1-10 demonstrating good cause, her claims against those defendants will be dismissed in seven days from the date of this order.

### III. CONCLUSION

Accordingly,

IT IS ORDERED:

1. The City Prosecutors' Motion to Dismiss, Filing 40, is granted;

2. The City Prosecutor defendants, Kevin Slimp and Makayla Danner, are dismissed from this action; and

3. Absent a motion for an extension of time for leave to serve defendants Jane and John Does 1-10 demonstrating good cause, Valentine-Williams's claims against those defendants will be dismissed in seven days from the date of this order.

Dated this 2nd day of July, 2025.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge